IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARNOLD MILES,

    *Plaintiff*,

v.

STATE OF MARYLAND, *et al.*,

    *Defendants*

Case No. 24-cv-1415-ABA

**MEMORANDUM OPINION AND ORDER**

Plaintiff Arnold Miles ("Miles"), who is incarcerated at the Eastern Correctional Institute in Westover, Maryland, was housed in a cell with Kevin Clark ("Clark"). Plaintiff alleges that both he and Clark had requested that they be separated, based on a combination of safety and religious reasons. In June 2021, Clark assaulted Miles, resulting in Miles permanently losing his left eye. Plaintiff has sued Warden William Bailey, Lieutenant James Reich, and Lieutenant Heather Griffiths ("Defendants"), alleging that they violated the Eighth Amendment of the U.S. Constitution, and several Maryland laws, in connection with the assault.[1] Defendants have filed a motion to dismiss. For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] The complaint incorrectly identifies this defendant as "Defendant Lieutenant Griffin," which Defendants later clarify should refer to Lieutenant Heather Griffiths. ECF No. 38-1 at 1 n.1. The complaint also named as defendants the State of Maryland and Carolyn J. Scruggs in her capacity as Secretary of the Maryland Department of Public Safety and Correctional Services, but Plaintiff has since withdrawn his claims against them. ECF No. 44.

I.   **BACKGROUND**[2]

On May 13, 2021, Plaintiff and Kevin Clark became cellmates at Eastern Correctional Institute ("ECI"). ECF No. 1 ¶ 18. Plaintiff "reported that he was concerned for his safety as it relates to his cellmate Kevin Clark." *Id.* ¶ 20. He alleges that, in addition to that request, "the two men sent a joint request, signed by both men, to be separated." *Id.* ¶ 19. Plaintiff alleges that the joint request was based on safety concerns. *See id.* ¶ 20 (alleging that Plaintiff's "independent[] report[]" was "also" based on a "safety" concern). Plaintiff alleges that ECI was thus on notice of a risk to Plaintiff's safety from being housed in a cell with Clark, particularly because ECI allegedly "had prior notice of Clark's violent tendencies toward other inmates" and had investigated an assault by Clark on his previous cellmate. *Id.* ¶¶ 32–33. As far as Plaintiff was aware, the reason Clark wanted to be separated from Plaintiff was because of "their incompatibility in religious preference" as Clark is Muslim and Plaintiff is Christian. *Id.* ¶ 21. But accepting Plaintiff's allegations, Plaintiff's expressed concerns were about safety. *Id.* ¶ 20. Lieutenant Griffin denied the separation requests. *Id.* ¶ 23.

About a month after Clark was moved into Plaintiff's cell, on June 14, 2021, "at approximately 4:00 a.m., Clark attacked Plaintiff in the cell as Plaintiff slept." *Id.* ¶ 24. Plaintiff suffered "significant facial injuries including the complete separation of his left eye from his head." *Id.* ¶ 25. After assaulting Plaintiff, Clark "attempted to get the attention of officers by banging on the door of the cell." *Id.* ¶ 26. Plaintiff alleges that officers initially ignored Clark and did not enter the cell "[m]ore than an hour later." *Id.*

---

[2] At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

¶ 28. Plaintiff was then taken to the prison medical unit, and then to Tidal Health Care, and later "Shock Trauma" (presumably referring to the Shock Trauma Center at the University of Maryland). *Id.* ¶ 30. Plaintiff alleges "there were no security rounds conducted by the officers on duty during the time of the assault even though the logbooks on the tier indicated they had been completed." *Id.* ¶ 31.

Clark was charged in the Circuit Court for Somerset County (Case No. C-19-CR-22-000133) with first- and second-degree assault of an inmate pursuant to Md. Code Ann., Crim. Law § 3-210. *Clark v. State*, No. 1879, 2023 WL 7627762, at *1 (Md. Ct. Spec. App. Nov. 15, 2023) (unpublished); *see also* ECF No. 1 ¶ 34. He was convicted after a trial in December 2022, and sentenced to seven years "to be served consecutively to any sentences he was already serving." *Clark*, 2023 WL 7627762, at *2. The Appellate Court of Maryland affirmed Clark's conviction in November 2023. *Id.*

On May 15, 2024, Plaintiff filed this case against the State of Maryland, Carolyn J. Scruggs in her capacity as Secretary of the Maryland Department of Public Safety and Correctional Services, Warden William Bailey, Lieutenant James Reich, Lieutenant Heather Griffiths, two John Doe officers, and all other unnamed officers who were on duty at the time of the assault. In July 2024, the State of Maryland and Secretary Scruggs filed a motion to dismiss the claims asserted against them. ECF No. 23. Plaintiff later filed a stipulation, withdrawing the claims he had asserted against those defendants. ECF No. 44. The other Defendants, Warden Bailey, Lt. Reich, and Lt. Griffiths ("Defendants"), filed a motion to dismiss the claims asserted against them. ECF No. 38. Plaintiff responded to that motion, ECF No. 43, and Defendants replied. ECF No. 51.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212.

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative relief" by containing "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion "must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a plausible claim. *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

Plaintiff's Complaint alleges six counts: (1) violation of the Eighth Amendment of

the U.S. Constitution by failing to protect and/or render aid[3]; (2) violation of Articles 24 and 26 of the Maryland Declaration of Rights[4]; (3) violation of Articles 16 and 25 of the Maryland Declaration of Rights; (4) negligence; (5) gross negligence; and (6) intentional infliction of emotional distress. Defendants argue that Plaintiff's claims against Warden Bailey, Lt. Reich, or Lt. Griffiths should be dismissed for failure to state a claim and/or on immunity grounds. ECF No. 38-1.

### A.     Counts 1 and 3: "Failure to Protect and/or Render Aid"

Plaintiff alleges that Defendants failed to protect him from being attacked by Clark, and then to aid him after he was attacked by Clark, and that those failures violated the Eighth Amendment (Count 1) and Articles 16 and 25 of the Maryland Declaration of Rights (Count 3).

"It is well settled that the Eighth Amendment's prohibition against the infliction of 'cruel and unusual punishments' reaches beyond a prisoner's sentence to 'the treatment of a prisoner . . . in prison and the conditions under which he is confined.'" *Ford v. Hooks*, 108 F.4th 224, 229 (4th Cir. 2024) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). That constitutional obligation includes "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st

---

[3] The complaint also refers to the Fourteenth Amendment in Count 1, but in his brief in opposition to the motion to dismiss, Plaintiff relies solely on the Eighth Amendment, and thus the Court will construe Count 1 as a § 1983 claim based on an alleged violation of the Eighth Amendment. In his opposition to the motion to dismiss, Plaintiff does not address Count 2, or Articles 24 and 26 of the Maryland Declaration of Rights, on which it is based. Accordingly, the Court deems Plaintiff to have abandoned Count 2.
[4] Count 2 is asserted under Articles 24 and 26 of the Maryland Declaration of Rights. ECF No. 1 ¶¶ 50–54.

Cir. 1988)). After all, "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). But "it is not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* Rather, "[s]uch injury must be the product of prison officials' *deliberate indifference* to the risk of injury." *Ford*, 108 F.4th at 230 (emphasis in original).

Two requirements must be met to state an Eighth Amendment claim based on an alleged failure to protect. "First, the deprivation alleged must be, objectively, sufficiently serious, [and second,] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (cleaned up). To satisfy the latter requirement, a plaintiff must allege that the prison official had a "sufficiently culpable state of mind," that is, one of "deliberate indifference to inmate health or safety." *Id.* (cleaned up); *see also Ford*, 108 F.4th at 230; *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010). "Deliberate indifference is a very high standard, and a showing of mere negligence will not meet it." *Ford*, 108 F.4th at 230 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004)). A plaintiff must show more than just that the prison official "*should have* recognized the risk and the inadequacy of his response," but rather that the prison official had a "*culpable mens rea*" such that "the prison official subjectively 'knew' of the substantial risk of harm to a prisoner and 'consciously disregarded' it." *Id.* (citing *Farmer*, 511 U.S. at 837, 839). The Maryland courts apply these same standards to prison failure-to-protect claims under Article 25 of the Maryland Declaration of Rights, which, like the Eighth Amendment provides, "[t]hat excessive bail ought not to be required, nor excessive fines imposed,

nor cruel or unusual punishment inflicted." Md. Const. Decl. of Rts. art. 25; *see Aravanis v. Somerset County*, 339 Md. 644, 656 (1995) ("[I]t is well settled in this State that Article 25 of the Maryland Declaration of Rights is *in para materia* with the Eighth Amendment.").[5]

Here, Plaintiff has alleged sufficient facts in support of Counts 1 and 3 to survive Defendants' motion to dismiss. Although his allegations regarding the notice Defendants received about safety-related concerns with housing Miles and Clark together are not particularly detailed, he has alleged that, on multiple occasions, Defendants were notified that leaving him in a cell with Clark created a safety risk for Plaintiff. ECF No. 1 ¶¶ 19–23, 32–33. Similarly, although it is not entirely clear from Plaintiff's allegations what involvement these particular Defendants (Warden Bailey, Lt. Reich, and Lt. Griffiths) had in considering Plaintiff's and Clark's requests or in responding to them, Plaintiff has alleged that these Defendants were among the "ECI administrators" who "had prior notice of Clark's violent tendencies toward other inmates," *id.* ¶ 32; that Lt. Reich and Lt. Griffith were correctional officers who "fail[ed] to prevent the brutal attack against Plaintiff," "cover[ed] up of their failure to protect Plaintiff after [the] occurrence," and "fail[ed] to render aid to Plaintiff despite the means

---

[5] Plaintiff also invokes Article 16 of the Maryland Declaration of Rights in Count 3. Article 16 provides that "no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time." Md. Const. Decl. of Rts. art. 16. It appears the Maryland Supreme Court has not decided whether Article 16 should be interpreted *in pari materia* with the Eighth Amendment, but the Appellate Court of Maryland has assumed without deciding that it should be. *See Torbit v. Baltimore City Police Dep't*, 231 Md. App. 573, 591 (2017); *see also Carter v. State*, 461 Md. 295, 308 (2018) (explaining that Articles 16 and 25 "have usually been construed to provide the same protection as the Eighth Amendment, although this Court has acknowledged that there is some textual support for finding greater protection in the Maryland provisions").

7

and duty to do so," *id.* ¶ 37; and that Warden Bailey "had the capacity and authority to make final decisions for the purpose of ECI policy, practice and conduct," *id.* ¶ 7.

At the summary judgment stage, Plaintiff will have to support those allegations not only with evidence that separation requests were made, but that these particular Defendants "subjectively 'knew' of the substantial risk of harm to a prisoner and 'consciously disregarded' it." *Ford*, 108 F.4th at 230. In *Ford*, for example, the Fourth Circuit held that correctional officers who were "aware of Ford's complaints requesting protective custody and the reasons for his fear of reprisal" but who "conclude[ed] that they did not have enough information to carry out an appropriate allegation" (in part because the plaintiff did not "g[i]ve names or even nicknames in response to the prison officials' investigatory efforts") were entitled to summary judgment on a failure-to-protect claim. 108 F.4th at 230–31. In contrast, the prisoner in that case was entitled to proceed to trial on his Eighth Amendment claim against another correctional officer who, "within earshot of other inmates on the unit, demand[ed] that Ford name the individuals threatening him," thereby creating a genuine dispute of fact about whether that officer "knowingly exacerbated the dangers to Ford that officers had already recognized." *Id.* at 228, 231.

But the question for now is not whether there is *evidence* sufficient to rise to that high standard, but whether Plaintiff has adequately *alleged* facts that, if true, would subject Warden Bailey, Lt. Reich, and Lt. Griffiths to liability on Plaintiff's deliberate indifference claims. Although the allegations are thin as discussed above—and the Court notes with respect to Plaintiff's claims against Warden Bailey that "there is no respondeat superior liability under § 1983," *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)—the Court concludes Plaintiff's allegations are sufficient to state a claim

8

and thus for Counts 1 and 3 to proceed to discovery.

That leaves Defendants' assertions of immunity. With respect to Defendants' assertion of Eleventh Amendment immunity, *see* ECF No. 38-1 at 5–8, Plaintiff does not dispute that such immunity applies insofar as he has sued Defendants in their official capacities. Because Plaintiff has alleged sufficient involvement by these Defendants in failing to prevent the assault as discussed above, the Court concludes that he has sufficiently alleged claims against these Defendants in their personal capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983.").

And with respect to qualified immunity, although dismissal of a complaint based on qualified immunity "is appropriate when the face of the complaint clearly reveals the existence of a meritorious defense," *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011) (quoting *Brooks v. City of Winston-Salem*, 85 F.3d 178–181 (4th Cir. 1996)), here Plaintiff has sufficient alleged that Defendants knew that putting him in a cell with Clark put him at serious risk of physical danger, and that they consciously disregarded that risk. And the legal standards under the Eighth Amendment based on threats among prisoners are clearly established, as discussed above. Indeed, Defendants only offer a single conclusory sentence in support of the argument that the complaint should be dismissed at the pleadings stage based on qualified immunity. *See* ECF No. 38-1 at 12 ("[E]ven if Plaintiff had stated a plausible claim that the defendants violated a constitutional right, they still would be entitled to qualified immunity."). And the case Defendants cite, *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013), is a summary judgment case, not a dismissal at the pleadings stage. It may turn out that the

evidentiary record will show, for example, that these Defendants were not, in fact, sufficiently put on notice of the risk that Clark would attack Miles to give rise to Eighth Amendment liability or to overcome qualified immunity. But at the pleadings stage, the Court must accept Plaintiff's allegations and reasonable inferences therefrom as true, including with respect to qualified immunity. And when those facts are accepted as true, they do not "clearly reveal[]" that Defendants are entitled to qualified immunity. *Cf. Brockington*, 637 F.3d at 506.

For these reasons, Defendants' motion to dismiss counts 1 and 3 will be denied.

## B. State-law tort claims

Plaintiffs' remaining claims are for negligence (count 4), gross negligence (count 5), and intentional infliction of emotional distress (count 6). Defendants argue those counts do not state claims on which relief can be granted, and that in any event they are entitled to immunity under the Maryland Tort Claims Act ("MTCA").

To establish a negligence claim, Plaintiff must allege facts demonstrating that "(1) the defendant owes the plaintiff a duty of care, (2) the defendant breached that duty, (3) the plaintiff sustained an injury or loss, and (4) the defendant's breach of the duty was the proximate cause of the plaintiff's injury." *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 451 Md. 600, 610 (2017) (citing *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 213 (2013)). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Barbre v. Pope*, 402 Md. 157, 187 (2007).

With respect to Defendants' assertion of public officer immunity, "[s]tate

10

personnel" sued in the performance of their public duties are entitled to immunity under the MTCA. Md. Code Ann., State Gov't § 12-101 through 12-110. Section 12-105 of the MTCA provides that State personnel have "immunity from liability" as provided under § 5-522(b) of the Courts and Judicial Proceedings Article. That section, in turn, provides that State personnel "are immune from suit in courts of the State and from liability in tort for a tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence, and for which the State or its units have waived immunity[.]" Cts. & Jud. Proc. § 5-522(b). This statutory immunity extends not only to simple negligence claims, but also to "non-malicious intentional torts and constitutional torts." *Lee v. Cline*, 384 Md. 245, 255 (2004).

Here, for the same reasons that Plaintiff has sufficiently alleged facts in support of Plaintiff's constitutional claims (Counts 1 and 3), discussed above, the factual allegations are sufficient to state a claim for gross negligence. *See* § III.B, *supra*. Thus the motion to dismiss Count 5 will be denied. But because public officer immunity requires, at minimum, *gross* negligence, Count 4, for negligence, will be dismissed based on the immunity conferred by § 5-522(b).

That leaves Count 6, Plaintiff's claim for intentional infliction of emotional distress. That claim requires Plaintiff to allege certain elements about the conduct of Defendants: "(1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress; [and] (4) the emotional distress must be severe." *Oliver v. Dep't of Pub. Safety and Correctional Servs.*, 350 F. Supp. 3d 340, 354 (D. Md. 2018) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). Plaintiff argues that this count states a claim on which relief can be granted because "Defendants knowingly

11

placed Plaintiff in harm's way by refusing to separate him from Kevin Clark, despite documented risks and repeated separation requests." ECF No. 43-1 at 17. But Maryland courts have recognized intentional infliction of emotional distress claims only in limited circumstances. *See Batson v. Shiflett*, 325 Md. 684, 734 (1992) ("We have upheld claims for intentional infliction of emotional distress only three times and only in cases which involved truly egregious acts."). None of the cases Plaintiff cites persuades this Court that the Maryland courts would expand the tort to include the type of claim at issue in this case. The closest Plaintiff comes is citing *Young v. Hartford Accident & Indem. Co.*, 303 Md. 182 (1985). But there, the allegations were that the defendant had engaged in conduct the "purpose" of which was "to harass the Plaintiff into . . . committing suicide." *Id.* at 198–99. Accordingly, the motion to dismiss Count 6 will be granted.

### IV.    CONCLUSION AND ORDER

For the reasons discussed above, the Court hereby ORDERS as follows:

1.    The motion to dismiss filed by the State of Maryland and Secretary Scruggs (ECF No. 23) is GRANTED in light of Plaintiff's withdrawal of the claims against those defendants, ECF No. 44. Accordingly, the Clerk shall TERMINATE the State of Maryland and Secretary Scruggs as defendants on the docket.

2.    The motion to dismiss filed by the other defendants (ECF No. 38) is GRANTED IN PART and DENIED IN PART. Counts 4 and 6 are DISMISSED; the motion to dismiss is denied as to the remaining counts.

Date:  August 28, 2025

*/s/*
_____
Adam B. Abelson
United States District Judge